UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| CHARLOTTE GREGORY, ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 4:15-cv-5 |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | By: Joel C. Hoppe |
| Defendant. ) | United States Magistrate Judge |

Plaintiff Charlotte Gregory asks this Court to review the Commissioner of Social Security's ("Commissioner") final decision denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 14. Having considered the administrative record, the parties' briefs, and the applicable law, I find that substantial evidence supports the Commissioner's decision that Gregory is not disabled. Therefore, I recommend that the Court **DENY** Gregory's Motion for Summary Judgment, ECF No. 17, **GRANT** the Commissioner's Motion for Summary Judgment, ECF No. 19, and **AFFIRM** the Commissioner's final decision.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. *See* 42 U.S.C. § 405(g); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and

1

whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id*., but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work *See* 20 C.F.R. § 404.1520(a)(4); *Heckler v. Campbell*,

2

461 U.S. 458, 460–62 (1983). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Gregory applied for DIB on September 19, 2011, alleging disability caused by lumbar injury, high blood pressure, and migraines. She claimed disability onset of July 23, 2011, at which time she was forty-six years old and had last worked as a truck driver. Administrative Record ("R.") 164–65, 187–94, ECF No. 11. Disability Determination Services ("DDS"), the state agency, denied her claim at the initial and reconsideration stages. R. 70–79, 81–92. On August 1, 2013, Gregory appeared without counsel at an administrative hearing before ALJ Mary C. Peltzer. R. 35–69. The ALJ heard testimony from Gregory, R. 44–62, and a vocational expert ("VE"), R. 62–67.

ALJ Peltzer denied Gregory's claim in a written decision issued on October 3, 2013. R. 18–30. She found that Gregory had severe impairments of degenerative disc disease of the lumbar spine with congenital bony fusion at L3-L4 and obesity, but also found that Gregory's impairments of hypertension, asthma, migraines, headaches, and diabetes mellitus were nonsevere. R. 20–21. The ALJ then determined that none of Gregory's impairments, alone or in combination, met or medically equaled the severity of a listed impairment. R. 21. As to Gregory's residual functional capacity ("RFC"),[1] the ALJ determined that Gregory could perform sedentary work,[2] with some postural and environmental limitations. R. 21–28. Based on

---

[1] A claimant's RFC is the most he or she can do on a regular and continuing basis despite his or her impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying [objects] like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). A person who can meet those lifting requirements can perform a full range of sedentary work if he or she can sit for about six

this finding and the testimony of the VE, the ALJ concluded that Gregory was unable to perform any of her past relevant work, but could perform other jobs existing in the national economy, including document preparer, taster, and addresser. R. 28–30. The ALJ therefore concluded that Gregory was not disabled. R. 30. The Appeals Council declined Gregory's request for review. R. 1–3. This appeal followed.

### III. Discussion

Gregory, now represented by counsel, argues that the ALJ erred in not fully crediting her descriptions of the limiting effects of her symptoms and by failing to account for her obesity and the side effects of her medication in determining her RFC. Pl. Br. 17–22, ECF No. 18. Because I find that substantial evidence in the record supports the ALJ's determinations, I must disagree with Gregory's arguments.

A.   *Gregory's Credibility*

   1.   *Relevant Facts*

Gregory primarily alleges disability caused by pain originating in her lumbar back and radiating into her right leg, which she claims began around her alleged onset date of July 23, 2011. R. 44; *see also* R. 328 (alleging pain symptoms on July 18, 2011). Imaging of her lumbar spine taken on July 24, 2011, showed congenital fusion of the L3 and L4 vertebral bodies and narrowing of the intervertebral disc space height at L4-L5. R. 313–14. An MRI taken on August 19, 2011, showed some fusion anteriorly of the vertebral bodies at L3-L4, with no significant neural compressive abnormality at this level; the MRI also showed a moderate-sized broad-based disk bulge at L4-L5, which was more prominent in the right lateral and far right lateral region, and which produced mild canal narrowing and contributed to severe right foraminal narrowing.

---

hours and stand and walk for about two hours in a normal eight-hour workday. *See Hancock v. Barnhart*, 206 F. Supp. 2d 757, 768 (W.D. Va. 2002); SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996).

Imaging showed degenerative change at L4-L5 with anterior osteophyte and some facet arthritis at L4-L5 and L5-S1. R. 302–04. A lumbar myelogram and CT scan, taken on January 30, 2012, showed congenital bony fusion at L3-L4, moderate to severe right and mild left neuroforaminal stenosis at L4-L5, and mild left and mild to moderate right neuroforaminal stenosis at L5-S1. R. 550–53.

Gregory described the back pain to her health care providers as "burning, pulling, tearing, shooting, tingling, sharp, stabbing, throbbing, camping [sic], and aching," and accompanied by numbness, weakness, and pain in her right leg, which affected her ability to walk. R. 286; *see also* R. 305–06, 322, 325, 328, 357. She claimed that her pain was exacerbated by movement, weight bearing, and prolonged sitting or standing. R. 286, 328, 357. On physical examination, Gregory was often tender to palpation around her spine. R. 286, 317, 358, 545. Range of motion in her back was limited at first, R. 286, 306, but eventually improved to normal, R. 676. Although she used a walker and later a cane, she could ambulate independently, including heel and toe walking. R. 289, 292, 306, 322.

Gregory's course of treatment was conservative, consisting of injections, physical therapy, and pain medication. R. 287, 289–90, 292–93, 297–98, 306, 326, 330. One health care provider remarked that Gregory was unresponsive to these conservative measures. R. 545–46. Other portions of the record, however, indicate that these measures were beneficial. Steroid injections provided Gregory with some (albeit temporary) relief of her pain and largely resolved the issues with her leg. R. 289, 292, 316, 319, 676–77. She also had some positive response to physical therapy. R. 309. She attended therapy only sporadically, however, R. 306, 309, and her improvement from it appears to have been fairly modest, R. 545.

5

Morris E. McCrary, III, M.D., at Central Virginia Neurosurgery, observed that if Gregory did not improve with conservative treatment, a foraminal decompression might be considered, but also warned that surgery might carry the risk of developing instability in Gregory's spine. R. 297. Dr. McCrary later observed that Gregory "would like to avoid surgery if possible," R. 292, although Gregory told another health care provider that she would want surgery "if that is the next step," R. 676. Gregory later testified to the ALJ that she would eventually need to have surgery, but that her doctor, Mark Shaffrey, M.D., wanted her to lose weight first.[3] R. 51–52.

On August 20, 2013, Eric Lackey, M.P.T., at Danville Orthopedic and Athletic Rehabilitation, conducted a physical RFC evaluation. R. 685–721. Lackey opined that Gregory could do sedentary work, but with only occasional tolerance for sitting tasks. R. 697. He noted, however, that it was difficult to assess the extent of Gregory's physical abilities, or whether she could tolerate sedentary work for an eight-hour day, because of self-limiting behavior and testing inconsistencies. R. 693–98. Lackey stated that self-limiting could be caused by pain, psychosocial issues, or attempts to manipulate test results, and observed that while a motivated client would self-limit on no more than 20% of test items, Gregory self-limited on 69% of tasks. R. 693. Lackey also noticed inconsistencies in Gregory's behavior. He observed that she stood for only two minutes and forty seconds while being tested for standing tolerance, but stood for at least five to ten minutes after testing was finished. Gregory also walked approximately two hundred feet (using the facility's wheelchair-accessible ramp) when she entered the building, but could walk only ninety feet during the mobility test. R. 694. She asked to stop the stairs test after almost falling down the stairs, but exited the building via the stairs after testing was complete. R.

---

[3] The record does not reveal that Gregory discussed surgery with Dr. Shaffrey at any time or with any other health care provider around the time of her hearing before the ALJ. *See, e.g.,* R. 545–46.

6

697–98. Furthermore, Lackey observed that Gregory used her cane on the incorrect side and did not place it or step to it properly. R. 694.

In her submissions to DDS and in her testimony before the ALJ, Gregory explained that she could do some activities around the house by herself and that other tasks required assistance from family members. Gregory stated that she could make her bed, shower, fold and iron clothes, wash dishes, and cook meals, although she used a seat in the shower and could not stand for more than a few minutes at a time while cooking. R. 59, 179–80, 224–26. Her husband and other family members helped with cleaning, outdoor chores, and some cooking. R. 60, 179–80, 225–26. She could dress herself with some difficulty, but needed assistance doing her hair. R. 59–60, 181, 225. She could pay bills and did some shopping by phone, mail, and computer, although her husband did most of the grocery shopping. R. 42, 182–83, 227. She used heating pads and ice to alleviate her pain, and she reported that she occasionally spent all day in bed. R. 44–45, 53, 179, 224. She left the house occasionally to go to medical appointments, physical therapy, and church, but could not drive a car because of pain in her leg. R. 46, 60–61, 182, 227–28. Gregory stated that the pain affected her sleep, and she sometimes could sleep only one or two hours in a night. R. 58–59, 181, 225. She reported no difficulty paying attention unless her pain got particularly bad. R. 184, 229. Letters submitted by Gregory's family members generally supported these assertions. R. 271, 273–74.

In making her RFC determination, the ALJ found that Gregory's statements (as well as the submissions of family members on her behalf) describing the intensity, persistence, and limiting effects of her symptoms were not entirely credible. The ALJ observed that physical examinations revealed minimal abnormalities and that Gregory had a normal gait even though she walked with a cane. She noted that Gregory's treatment was conservative and she responded

7

positively to physical therapy and steroid injections. The ALJ also found that Gregory's reported activities of daily living, including her ability to independently care for her personal needs, perform some household chores, and shop by phone, showed that Gregory was not fully limited by her symptoms. Finally, the ALJ pointed to the inconsistencies and self-limiting behavior observed by Eric Lackey and noted that "[a]lthough such inconsistencies may not be the result of a conscious intention to mislead, they suggest that reports regarding the claimant's limitations may not be entirely reliable." R. 27–28.

    2.    *Analysis*

The regulations set out a two-step process for evaluating a claimant's allegation that she is disabled by symptoms, such as pain, caused by a medically determinable impairment. *Fisher v. Barnhart,* 181 F. App'x 359, 363 (4th Cir. 2006) (citing 20 C.F.R. § 404.1529). The ALJ must first determine whether objective medical evidence[4] shows that the claimant has a medically determinable impairment that could reasonably be expected to cause the kind and degree of pain alleged. 20 C.F.R. § 404.1529(a); *see also Craig,* 76 F.3d at 594. If the claimant clears this threshold, then the ALJ must evaluate the intensity and persistence of the claimant's pain to determine the extent to which it affects her physical or mental ability to work. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *see also Craig,* 76 F.3d at 595.

The latter analysis often requires the ALJ to determine "the degree to which the [claimant's] statements can be believed and accepted as true." SSR 96-7p at *2, *4. The ALJ cannot reject the claimant's subjective description of her pain "solely because the available

---

[4] Objective medical evidence is any "anatomical, physiological, or psychological abnormalities" that can be observed and medically evaluated apart from the claimant's statements and "anatomical, physiological, or psychological phenomena [that] can be shown by the use of medically acceptable diagnostic techniques." 20 C.F.R. § 404.1528(b)–(c). "Symptoms" are the claimant's description of his or her impairment. *Id.* § 404.1528(a).

8

objective medical evidence does not substantiate" that description. 20 C.F.R. § 404.1529(c)(2). A claimant's allegations of pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." *Craig*, 76 F.3d at 595.

Gregory asserts that her allegations of pain are supported by imaging that showed fusion of the L3 and L4 vertebrae and disc degeneration at L4-L5, which produced severe right neural foraminal narrowing. Pl. Br. 17–19. This objective medical evidence does not contradict the ALJ's findings. In fact, the ALJ stated that Gregory's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," thus satisfying the first step of the two-step process for evaluating allegations of pain. R. 27. Even though the objective evidence showed an impairment that *could* cause Gregory's alleged symptoms, it does not necessarily follow that these symptoms were in fact so severe as to be disabling. Under the second step of the two-step process, the ALJ needed to evaluate the limiting effects of Gregory's alleged symptoms, which required her to determine whether Gregory's allegations of pain were credible.

Gregory challenges the ALJ's conclusion that her conservative course of treatment undermines her credibility as to the intensity of her pain. Pl. Br. 20. While there is "no bright-line rule [for] what constitutes 'conservative' versus 'radical' treatment," *Gill v. Astrue*, No. 3:11cv85, 2012 WL 3600308, at *6 (E.D. Va. Aug. 21, 2012), "[a]n unexplained inconsistency between the claimant's characterization . . . of [her] condition and the treatment [she] sought to alleviate that condition" can bear heavily on the claimant's credibility, *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (citing the current 20 C.F.R. § 416.929(c)(3)). It was reasonable for the ALJ to characterize Gregory's course of treatment, consisting of pain medication,

9

physical therapy, and steroid injections, as "conservative." *See, e.g.*, *Bin-Salamon v. Comm'r of Soc. Sec.*, No. 4:13cv62, 2015 WL 302835, at *8 (W.D. Va. Jan. 23, 2015). Additionally, Dr. McCrary initially encouraged her to return to work, explaining that activity would help her back condition and symptoms. R. 306.

This course of treatment is not fully inconsistent with Gregory's allegations of pain, however. The record is mixed as to the effectiveness of conservative treatment in reducing Gregory's pain. *Compare* R. 289, 309 (expressing some improvement from injections and physical therapy), *with* R. 545–46 (noting that Gregory was unresponsive to conservative treatment). Although Gregory did not undergo surgery, the ALJ failed to acknowledge that there were substantial risks attendant to the recommended procedure. R. 297. Furthermore, Gregory expressed a willingness to pursue surgery if necessary, R. 676, and appeared to be considering surgery at the time of her hearing before the ALJ, R. 51–52. The recommendation of surgery–an invasive form of treatment–demonstrates the seriousness of Gregory's impairment. It also erodes the grounds for the ALJ's finding that Gregory's treatment was solely conservative.

Nonetheless, other factors provide ample support for the ALJ's finding that Gregory was not fully credible as to the limiting effects of her symptoms. Findings on physical examination were mostly normal. Although Gregory was tender to palpation around her lumbar spine, R. 286, 317, 545, she generally exhibited no pain on straight leg raising, had full strength in her lower extremities, and could ambulate independently, R. 286, 289, 292, 306, 545, 676. As the ALJ noted, Gregory reported that she could independently perform at least some activities of daily living. Although Gregory was unable to perform other, more physically demanding activities, this is reflected in the ALJ's highly limited RFC determination of sedentary work with restrictions on standing, walking, and other exertional functions. R. 21–22. Even more critically,

Gregory's self-limiting behavior during her examination with Eric Lackey, including behavior that was inconsistent with her actions immediately before and after the examination, casts doubt on the accuracy of her statements regarding the limiting effects of her symptoms. Lackey's observations that Gregory could stand for five to ten minutes and walk two hundred feet, R. 694, were also inconsistent with Gregory's testimony that she could stand for only three to five minutes and walk only two to three yards, R. 55. Additionally, during Lackey's evaluation, Gregory would not attempt to lift a ten-pound object off a table, R. 694, but she testified that she lifts and carries her purse, which weighs between five and ten pounds, R. 56. Considering Gregory's perceived lack of effort and inconsistent statements, the ALJ could reasonably conclude that Lackey's observations undermined Gregory's claims of extreme limitations. These inconsistencies between Gregory's claimed limitations and the examination findings and other observations in the medical records provide substantial evidence for the ALJ's determination that Gregory's claims were not fully credible.

B.   *Effects of Obesity and Medications*

Gregory also contends that the ALJ failed to account for the effects of aggravating factors, in particular her obesity and side effects of her medications, when she determined Gregory's RFC. Pl. Br. 21–22. In making an RFC determination, an ALJ should consider the combined effect of all of a claimant's impairments, including those she has found to be non-severe. 20 C.F.R. § 404.1545(a)(2), (e). The regulations acknowledge that obesity in particular can compound the effects of other impairments:

> Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of

11

> impairments, and when assessing a claim at other steps of the sequential evaluation process, *including when assessing an individual's residual functional capacity*, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(Q) (emphasis added).

Here, although the ALJ did not expressly account for Gregory's obesity in her RFC determination, she did state that it was "evaluated in conjunction with other related conditions." R. 21. Furthermore, while Gregory was considered obese at 223 pounds on the date she testified before the ALJ, R. 21 n.1, her weight during the alleged disability period was consistently higher, *see, e.g.*, R. 306, 556, 724 (recording a weight of at least 230 pounds between August 13, 2011, and July 27, 2013). Notwithstanding Gregory's obesity, her medical providers consistently encouraged her to exercise, engage in physical therapy, and even continue with work activities. *See* R. 292-93, 306, 667. Thus, any observations of Gregory's limitations throughout this period would necessarily account for her obsese condition. Finally, Gregory has not explained in any detail, and the record does not otherwise reflect, how her obesity contributes to the limiting effects of her back condition. Pl. Br. 22. Remand would not be appropriate where, as here, a claimant cannot show any additional limitations caused by her obesity beyond those already established by her other impairments. *Lehman v. Astrue*, 931 F. Supp. 2d 682, 691 (D. Md. 2013). Moreover, the ALJ restricted Gregory to sedentary work, which in this case adequately accounts for her limitations caused by obesity and other impairments. *See Freeman v. Colvin*, No. 7:12cv50, 2013 WL 3967487, at *7–8 (W.D. Va. July 31, 2013).

Likewise, Gregory has not shown that the ALJ erred by failing to consider the side effects of Gregory's medication in her RFC determination. As with obesity, an assessment of a claimant's RFC must account for "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., . . . side effects of medication)." SSR 96-8p, 1996

WL 374184, at *5 (July 2, 1996). However, an ALJ's failure to consider medication side effects prejudices the claimant only if the claimant has provided evidence that the side effects caused some limitation not otherwise reflected in the claimant's RFC. *Cf. Lowery v. Commissioner*, No. 4:10cv47, 2011 WL 2648470, at *4 (W.D. Va. June 29, 2011) ("Plaintiff has failed to show that his . . . medication side effects create limitations which should have been included in the Law Judge's RFC finding."). Although Gregory claimed that her medication caused nausea and headaches, R. 49–50, 176–77, 221–22, which the ALJ acknowledged in her opinion, R. 23, nothing in the record shows that these side effects produced any meaningful functional limitations. Only Gregory herself gives any indication that the headaches caused by her medication might be limiting, R. 49–50, and she did not raise any serious complaints regarding her medication-induced nausea, which she apparently treated with an additional anti-nausea medicine, R. 667.

As explained *supra*, the ALJ properly found that Gregory's statements regarding the subjective effects of her symptoms were not fully credible, and this credibility finding is only reinforced by the fact that Gregory's testimony regarding the frequency of her headaches was inconsistent, *see* R. 49–50 (testifying that headaches occurred once per week and then claiming that they occurred twenty to thirty times per month). In addition, the ALJ found separately that Gregory's migraines and headaches were nonsevere, R. 21, a finding which Gregory does not dispute. Furthermore, none of Gregory's health care providers opined that the side effects of her medication would cause any significant limitations. Finally, Gregory has not shown how any alleged limitations caused by side effects from medication are inconsistent with the ALJ's RFC determination, which, as the Commissioner notes, is already "very restrictive." Def. Br. 8, ECF No. 20. I therefore find that the ALJ did not commit reversible error by failing to specifically

13

provide for any additional limitations caused by Gregory's obesity and side effects from her medication.

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that Gregory's motion for summary judgment, ECF No. 17, be **DENIED**, the Commissioner's motion for summary judgment, ECF No. 19, be **GRANTED**, the Commissioner's final decision be **AFFIRMED**, and this case be **DISMISSED** from the Court's active docket.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: May 6, 2016

Joel C. Hoppe
United States Magistrate Judge